**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| RICHARD LEAKE and MICHAEL DEAN, <br><br>    Plaintiffs, <br><br> v. <br><br> JAMES T. DRINKARD, *in his personal capacity and official capacity as Assistant City Administrator of City of Alpharetta, Georgia,* et al. <br><br>    Defendants. | CIVIL ACTION FILE NO.: 1:19-cv-3463-WMR |

## **ORDER**

For the past seventy years, the City of Alpharetta has honored war veterans each August with its annual Old Soldiers Day Parade (the "Parade"). The Parade began after the Civil War and originally honored Confederate soldiers. Upon the resurgence of the Parade in 1952 after World War II, the honorees of the Parade were extended beyond Civil War veterans to include veterans of other wars. Importantly, in addition to the expansion of the Parade's honorees, society has evolved since the Parade's formation and no longer holds the same degree of affinity

1

for Confederate emblems and flags that previously existed.[1]  Additionally, groups have used and continue to use Confederate flags to symbolize viewpoints and conduct that is otherwise considered offensive today.

With this historical context in mind, the present dispute concerns the City of Alpharetta's decision to refuse to allow the Sons of Confederate Veterans (the "SCV") to march in the 2019 Parade while carrying and otherwise displaying the Confederate flag.  The City did not want to embrace any negative messages that the Confederate flag conveys to those who find the use of the flag to be offensive.  The City was also concerned about the prospect of violence that could result if the SCV carried the Confederate flag in the Parade, particularly in light of recent incidents in other parts of the country.

The parties agree that if the Parade constitutes government speech, the City was within its right to refuse the SCV's use of the Confederate flag.  The parties disagree, however, as to whether the Parade was in fact government speech due to the City's role as a co-sponsor of the Parade and its lack of "exclusive" province over the event.  For the reasons discussed in more detail below, this Court finds the

---

[1] This point is clearly demonstrated by the move of state and local governments in recent weeks to remove Confederate monuments from public property.

Parade is government speech and, thus, concludes that Plaintiffs cannot prevail on the merits of their claims in this action. As such, upon due consideration of the arguments presented by counsel at the hearing on May 28, 2020, all applicable law, and the record, the Court hereby **GRANTS** Defendants' Motion for Summary Judgment [Doc. 39].

## I. FACTUAL BACKGROUND

The Parade was originally created to honor local Civil War veterans, but was discontinued after a few years. [Doc. 1 at ¶ 9; Doc. 30 at ¶ 9]. A group of men from Alpharetta re-established the Parade in 1952 after World War II to recognize all local war veterans. [*Id.*]. Today, the Parade is held annually in Alpharetta, Georgia, on the first Saturday of August. [*Id.*]. The City advertised the Parade on its government website as "a way to celebrate and honor all war veterans, especially those from Alpharetta, who have defended the rights and freedoms enjoyed by everyone in the United States of America." [*Id.*].

The City previously sponsored the Parade, including the 2019 Parade. [Doc. 39-3 at ¶ 3 (hereinafter "Drinkard Decl.")]. The City was the primary financial sponsor of the Parade and provided, at its own expense, the event space, public safety personnel, barricades, and vendors. [*Id.* at ¶¶ 11-12]. Additionally, the City decided what entities could participate in the Parade based on "the Mayor and the City

3

Council's decision of what message the City would like the Parade to communicate."[2]  [*Id.* at ¶¶ 4-5].

On July 8, 2019, Plaintiff Richard Leake submitted an application to register the SCV for the 2019 Parade, such application which described the SCV's float as a "truck pulling trailer with participants holding unit flags."  [Doc. 1-1].  The application form included the City's logo.  [*Id.*].  On July 9, 2019, Defendant James Drinkard, the Assistant City Administrator, sent a letter to Mr. Leake in response to the SCV's application, informing him that the City would not permit the use of the Confederate flag during the 2019 Parade.  [Doc. 1-2 at 1].

The City explained that the Confederate flag had become a "divisive symbol that a large portion of [its] citizens see as symbolizing oppression and slavery" and that it was concerned the use of the flag would detract from "the goals of the Old Soldiers Day Parade and the service of our American war veterans."  [*Id.*].  The letter further informed Mr. Leake that the City would allow the SCV to participate in the 2019 Parade and use the SCV's logo, even though it includes other (smaller) symbols of the Confederacy, but would not allow the use of the Confederate flag.  [*Id.* at 1-

---

[2] Plaintiffs have put forth no contrary evidence to rebut the facts that the City was the primary financier of the Parade and that the City decided who could participate in the Parade.  As such, this Court finds these facts to be undisputed for purposes of its analysis on summary judgment.

2]. The City's decision was reiterated in a letter from its attorney to Plaintiffs' attorney on July 25, 2019, which stated that the use of the Confederate flag would not be permitted, but that the SCV would be able to display its logo and wear its regalia, which incorporates traditional Confederate symbols. [Doc. 1-3 at 1].

On July 31, 2019, Mr. Leake and Michael Dean (together, the "Plaintiffs") filed their Complaint against Defendant Drinkard, in his personal and official capacity as Assistant City Administrator, asserting violations of Plaintiffs' rights of free speech under the First and Fourteenth Amendments and requesting temporary, interlocutory and permanent injunctive relief. [Doc. 1]. Plaintiffs also filed a Motion for Emergency Temporary Restraining Order to prohibit Defendant from banning the use of the Confederate flag during the 2019 Parade. [Doc. 2]. Plaintiffs amended the Complaint on August 1, 2019, to include the presently named Defendants. [Doc. 9].

On August 2, 2019, this Court reserved ruling on Plaintiffs' Motion for Emergency Temporary Restraining Order. [Doc. 13 at 6]. On August 3, 2019, the Parade occurred without the participation of the SCV. [Drinkard Decl. at ¶¶ 19-20]. On December 9, 2019, this Court denied Plaintiffs' Motion for an Emergency Temporary Restraining Order, reserved ruling on the permanent injunction and

monetary judgment requests, and ordered the parties to proceed with discovery. [Doc. 29 at 2].

Also, on December 9, 2019, the Mayor and City Council adopted a Resolution stating the City would no longer sponsor or financially support the Parade and that if the Parade was to be continued, it would be under the sponsorship and funding of private entities. [Drinkard Decl. at Exhibit 4]. On March 21, 2020, Defendants filed the present Motion for Summary Judgment, arguing (1) that Plaintiffs' claim for injunctive relief is constitutionally moot because the City will no longer sponsor the Parade and (2) that Plaintiffs' claims for relief under 42 U.S.C. § 1983 fail on the merits because the 2019 Parade constituted government speech and was therefore outside the scope of the Free Speech Clause of the First Amendment. [Doc. 39].

## II.   SUMMARY JUDGMENT STANDARD

When the parties' pleadings, affidavits, and other discovery materials establish that there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law, summary judgment should be granted. Fed. R. Civ. P. 56(a). The moving party bears the burden of showing the absence of a genuine issue of material fact when viewing the evidence in the light most favorable to the nonmovant. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). After a motion for summary

6

judgment has been properly supported, the nonmovant must present affirmative evidence "from which a reasonable jury might return a verdict in his favor" and that demonstrates the presence of "a genuine issue of fact that requires a trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## III. DISCUSSION

Defendants argue they are entitled to summary judgment because (1) Plaintiffs' § 1983 claim fails because the City was engaging in government speech and within its right to prohibit the use of the Confederate flag at the 2019 Parade, and (2) Plaintiffs' request for injunctive relief is now constitutionally moot because the City will no longer sponsor the Parade in the future. [Doc. 39-1 at 7]. Plaintiffs disagree, arguing that (1) the City was not engaging in government speech because it was not the exclusive sponsor of the Parade, or at the very least, a dispute of material fact exists as to the extent of the City's sponsorship of the event, and (2) the City's decision to discontinue its sponsorship of future Parades does not constitutionally moot their request for injunctive relief.

To prevail on a § 1983 claim, "a plaintiff must show that he or she was deprived of a federal right by a person acting under color of state law." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). Plaintiffs claim that their First and Fourteenth Amendment rights of free speech were violated by the City's

7

prohibition on the use of the Confederate flag during the 2019 Parade. [Doc. 1 at ¶ 19]. The parties do not dispute that Plaintiffs have a generalized right of free speech nor that Defendants were acting under the color of state law in prohibiting the use of the Confederate flag during the 2019 Parade. [Doc. 39-1 at 13; Doc. 41 at 7]. The parties disagree, however, as to whether the City was engaging in government speech, which exists outside the application of the Free Speech Clause. [Doc. 39-1 at 13; Doc. 41 at 7].

"[T]he Government's own speech . . . is exempt from First Amendment scrutiny." *Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009) (alteration in original) (quoting *Johanns v. Livestock Marketing Ass'n*, 544 U.S. 550, 553 (2005)). The City, through its own speech, "is not barred by the *Free Speech Clause* from determining the content of what it says." *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 207 (2015). "This freedom includes 'choosing not to speak' and 'speaking through the . . . removal' of speech that the government disapproves." *Mech v. Sch. Bd. of Palm Beach Cty.*, 806 F.3d 1070, 1074 (11th Cir. 2015) (quoting *Downs v. L.A. Unified Sch. Dist.*, 228 F.3d 1003, 1012 (9th Cir. 2000)).

The Supreme Court has previously held that both specialty license plates and monuments in public parks can constitute government speech. *See Walker*, 576 U.S.

at 211-213, 219 (holding that Texas specialty license plate designs were government speech because license plates have historically communicated messages from the States, license plates are "often closely identified in the public mind with the [State]," and Texas held final approval authority over the designs); *Summum*, 555 U.S. at 464, 471-473 (2009) (holding that permanent monuments in a city park were government speech because the city exercised final approval authority over the monuments displayed on government land for the purpose of projecting the intended image of the city and that observers would appreciate the government as the speaker).

In deciding these cases, the Supreme Court established a non-exhaustive, context-based, three-factor test to determine whether the government is engaging in its own speech. *See Walker*, 576 U.S. at 209-210. The first factor analyzes the context of the speech historically to determine whether the government "wishes to convey some thought or instill some feeling." *Id*. at 209. The second factor determines whether an observer would ordinarily "appreciate the identity of the speaker" as the government. *Id.* at 210. Finally, the third factor determines whether the City "'effectively controlled' the messages." *Id.*

The Parade meets the first factor, whether the government wishes to convey some thought or instill some feeling, as the City has historically used the Parade to

9

convey its appreciation of American war veterans to the public. [Doc. 1 at 3]. Parades are a form of expression in which the participants convey a message to the public through the "inherent expressiveness of marching." *See Hurley v. Irish-Am. Gay*, 515 U.S. 557, 568 (1995) ("[W]e use the word 'parade' to indicate marchers who are making some sort of collective point, not just to each other but to bystanders along the way"). For over seventy years collectively, the City has sponsored the Parade to celebrate American war veterans and to communicate its goals with the public. *See Mech*, 806 F.3d at 1075-76 ("A medium that has long communicated government messages is more likely to be government speech"). The goal of the Parade is to instill a feeling of appreciation in the public for American war veterans, and the Parade has the effect of conveying this message. *See Summum* 555 U.S. at 472 ("The monuments . . . are meant to convey and have the effect of conveying a government message, and they thus constitute government speech").

The second factor, that an observer would ordinarily "appreciate the identity of the speaker" as the government, is also met. Parades, like monuments, are a "means of expression," and as a government-sponsored and government-financed event, the public would likely identify the City as the Parade's speaker. *See id*. 470-71 ("A monument, by definition, is a structure that is designed as a means of expression . . . . In this context, there is little chance that observers will fail to

appreciate the identity of the speaker."). Like in *Walker*, where the Supreme Court concluded that the public would closely identify Texas license plates with the State in part because the State places the State's name on every license plate and the plates are issued by the State; the Parade applications bear the City's logo; and the event is advertised on a government website as being hosted by the City. *Walker*, 576 U.S. at 212; [Docs. 1 at ¶ 9; 1-1].

Even though the Parade is not a government-issued ID as in *Walker*, the City is closely associated with the Parade. It takes place on City streets, so it is likely that a Parade observer would reasonably conclude that the City was endorsing the use of the Confederate flag if flown during the Parade. *See Mech*, 806 F.3d at 1076. And, the use of the Confederate flag during the Parade would, or at the very least could, be viewed as an endorsement by the City because flags used during wars would be related to the City's goal of celebrating war veterans. *Id*. at 1078 ("[O]bservers would view [the banners] as government-sponsored advertisements because tutoring services are related to the schools' educational mission.").

Finally, the third factor, that the City "effectively controlled" the message, is met because the City maintained control over the messages conveyed through the Parade by having the final approval over who participates and in what capacity. *See Walker,* 576 U.S. at 213 ("Texas 'has effectively controlled' the messages

[conveyed] by exercising 'final approval authority' over their selection." (alteration in original)).  The City determines who can participate in the Parade based on the "Mayor and City Council's decision of what message the City would like the Parade to communicate."  [Drinkard Decl. at ¶¶ 4-5].  Plaintiffs do not dispute that it was Defendant Drinkard, the Assistant City Administrator, who first notified Mr. Leake about the City's decision to prohibit the SCV from using the flag during the 2019 Parade.  [Doc. 42-2 at ¶ 6].

Plaintiffs argue that the Parade is not government speech because American Legion co-sponsored the event and the City did not have exclusive control over the Parade's message.  [Doc. 42 at 10].  Plaintiffs rely on evidence showing the City referred to itself on various occasions as a "co-sponsor" of the Parade.  [Doc. 42-1 at 40-41, 42-44, 45-46].  Plaintiffs' argument fails, however, because it is well-settled that the participation of private actors does not necessarily create private speech.  *See Walker*, 576 U.S. at 217 ("The fact that private parties take part in the design and propagation of a message does not extinguish the governmental nature of the message or transform the government's role into that of a mere forum-provider").  Furthermore, the City was not simply an inconsequential co-sponsor in name only, but rather, primarily funded the Parade, provided the necessary means

by which the Parade occurred, and held final approval over participants. [Drinkard Decl. ¶¶ 4, 11-12].

In sum, the Court concludes that the City was engaging in government speech through the Parade. The City has historically utilized the Parade to convey their public message of appreciation to American war veterans. The City's presence in the application process, advertising, and in the Parade itself leads an observer to identify the speaker as the City. The City's financial and administrative control over the Parade establishes that the City had direct control over the message disseminated to the public. The voice of the Parade was that of the government, and the City was within its right to restrict the SCV's use of the Confederate flag so as to portray what the City thought to be appropriate for their message. Thus, upon this Court's review of the record and applicable law, the Court finds that there are no genuine disputes of material fact and that the City is entitled to summary judgment on Plaintiffs' § 1983 claim.

As Plaintiffs cannot prevail on the merits on their § 1983 claim because the Court finds that the City was engaging in government speech, this Court need not determine the merits of Defendants' mootness defense, which is relevant only to Plaintiffs' request for a permanent injunction. "[T]o obtain a permanent injunction, a party must show: (1) that he has prevailed in establishing the violation of the right

asserted in his complaint; (2) that there is no adequate remedy at law for the violation of this right; and (3) that irreparable harm will result if the court does not order injunctive relief." *Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1128 (11th Cir. 2005) (citing *Newman v. State of Ala.*, 683 F.2d 1312, 1319 (11th Cir. 1982)).  As Plaintiffs cannot prevail in establishing that Defendants violated their rights of free speech, it follows that they cannot establish the requirements to succeed on their request for injunctive relief.  As such, Defendants' success on the merits of their claims ends the inquiry, and the Court declines to address Plaintiffs' mootness argument.

**IV.   CONCLUSION**

Based on the foregoing, Defendants' Motion for Summary Judgment [Doc. 39] is hereby **GRANTED**.

**IT IS SO ORDERED**, this 25th day of June, 2020.

_____
WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE